IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HERBERT M. BELLINGER, JR.,

      Plaintiff,                        No. CIV S-02-2335 LKK GGH P

      vs.

DEPUTY ALLBEE, et al.,

      Defendants.               FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

      Plaintiff is proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' summary judgment motion filed December 17, 2004. After carefully considering the record, the court recommends that defendants' motion be granted in part and denied in part.[1]

/////

---

[1] On October 4, 2004, plaintiff filed a summary judgment motion. On October 13, 2004, the court ordered this motion disregarded based on plaintiff's failure to file a proof of service as required by Fed. R. Civ. P. 5(d). Defendants apparently received plaintiff's motion because on December 22, 2004, they filed an opposition. Without a proper proof of service, the court cannot determine whether defendants' opposition is even timely. Pro se litigants are held to the same procedural rules as litigants represented by counsel. King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The court will not reinstate plaintiff's summary judgment motion.

1

II. <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" <u>Id.</u> Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See <u>id.</u> at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." <u>Id.</u> In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." <u>Id.</u> at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its

contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

3

On February 18, 2003, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

III. Discussion

This action is proceeding on the amended complaint filed January 10, 2003. The defendants are Sacramento County, Sheriff Blanas, Deputy Sheriff Allbee, Deputy Gargano, Deputy Treat, Deputy Sergeant Stewart and Deputy Lieutenant Powell. Plaintiff, who is African American, possibly alleges that defendants violated the Thirteenth Amendment and certainly alleges the Equal Protection Clause of the Fourteenth Amendment when they cut off his braids while he was a pretrial detainee at the Sacramento County Jail. In particular, plaintiff alleges that defendants enforce the no-braid hair policy against African American inmates only. Plaintiff claims a violation of the Eighth Amendment, which given his status as a pretrial detainee would be a Fourteenth Amendment claim.

Before the court begins its analysis, plaintiff's claims must be clarified. First, plaintiff does not appear to challenge the constitutionality of the no-braid policy. Second, in some of his pleadings plaintiff suggests that no policy existed which prohibited pretrial detainees from wearing braids. This claim would conflict with the claim clearly raised in the complaint that the no-braid policy was selectively enforced against African American inmates. Accordingly, the court finds that the Equal Protection claim is based on this one theory only.

A. Qualified Immunity

Defendants first argue that they are entitled to qualified immunity as to plaintiff's Thirteenth Amendment and Equal Protection claims. "Qualified immunity, however, shields § 1983 defendants [f]rom liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

\\\\\

known.'" <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)).

Under <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S. Ct. 2151 (2001), the first step in the qualified immunity analysis is to take the facts in the light most favorable to plaintiff and ask whether those facts show that defendant's conduct violated a constitutional right. <u>Estate of Ford v. Ramirez-Palmer</u>, 301 F.3d 1043, 1050 (9th Cir. 2002), citing <u>Saucier</u>, 533 U.S. at 201, 121 S. Ct. at 2156.

The Thirteenth Amendment provides in relevant part that "[n]either slavery nor involuntary servitude...shall exist within the United States." U.S. Const. amend. XIII. The court cannot locate where in the amended complaint plaintiff references the Thirteenth Amendment (the court thinks that defendants have confused their roman numerals). To the extent plaintiff has raised a Thirteenth Amendment claim, in terms of a private right of action, the Thirteenth Amendment is viewed as having two separate sections—the prohibition of slavery or involuntary servitude itself (outside of prison), which is self-executing, and the abolition of badges and incidents of slavery, which depends on legislation passed by Congress. This dichotomy was well stated in <u>Channer v. Hall</u>, 112 F.3d 214, 217 (n.5) (5th Cir. 1997):

> Section two "clothe[s] 'Congress with power to pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States.'" *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 439, 88 S.Ct. 2186, 12203, 20 L.Ed.2d 1189 (1968) (quoting The Civil Rights Cases, 109 U.S. 3, 20, 3 S.Ct. 18, 27-28, 27 L.Ed. 835 (1883)) (emphasis omitted). Appellees contend that there is no direct private right of action under the Amendment because Congress acting under § 2 is the creator and definer of 13th Amendment rights. While it is true that suits attacking the "badges and incidents of slavery" must be based on a statute enacted under § 2, suits attacking compulsory labor arise directly under prohibition of § 1, which is "undoubtedly self-executing without any ancillary legislation" and "[b]y its own unaided force and effect ... abolished slavery, and established universal freedom." The Civil Rights Cases, 109 U.S. at 20, 3 S.Ct. at 28. The cases upon which Appellees rely are § 2 "badges and incidents" cases and are thus inapplicable to Channer's claim. See, e.g., *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (suit under 42 U.S.C. § 1985(3) arising out of racially motivated assault and battery); *Holland v. Board of Trustees of Univ. Dist. Colum.*, 794 F.Supp. 420, 424 (D.D.C.1992) (holding that discrimination-based badges and incidents suit must be brought under 42 U.S.C. § 1981, not directly under 13th Amendment).

See also: Jane Doe I v. Reddy, 2003 WL 23893010, *10 (N.D.Cal. 2003) which contains a good discussion of the case law.

Plaintiff's claim does not fall within the self-executing clause of the Thirteenth Amendment, i.e., an asserted unequal policy about the wearing of hair braids in jail/prison cannot be equated with peonage. Nor does plaintiff suggest any statute of Congress which would proscribe prison officials from abolishing braids in prison regardless of the braids' primary identity with a particular racial group. Plaintiff's claim that defendants cut off his braids does not state a claim pursuant to the Thirteenth Amendment. Therefore, the court need not go further in its qualified immunity analysis of this claim. To the extent the amended complaint raises a Thirteenth Amendment claim, defendants are entitled to summary judgment as to this claim.

The court next considers whether the facts, taken in the light most favorable to plaintiff, demonstrate that defendant racially discriminated against plaintiff when they cut off his braids. Prisoners may not be subject to racial discrimination. Lee v. Washington, 390 U.S. 333, 88 S. Ct. 994 (1968)(per curiam). A prisoner must show discriminatory intent to succeed on a claim of racial discrimination. Washington v. Davis, 426 U.S. 229, 240, 96 S. Ct. 2040, 2048 (1976).

Defendants argue that they were not motivated by racial discrimination when they cut off plaintiff's braids. Defendants contend that on August 31, 2002, they cut off plaintiff's braids, which were prohibited by jail policy, after he refused orders to undo them. On that date, defendants also found pruno in plaintiff's cell. Attached as exhibit A to defendant Allbee's declaration filed December 17, 2004, is a copy of a portion of the jail handbook. Rule number 20 states,

> Hair, inmates shall not: braid, twist, knot, bun, tie, or place anything foreign in your hair. Hair must be free flowing for security purposes. Extensions, beads, etc...are considered contraband and shall be removed. The property office will put them in your property.

\\\\\

1       In support of his claim that defendants were motivated by racial discrimination,
2  plaintiff alleges in the verified complaint that on August 31, 2002, after his hair was cut, he saw
3  two white inmates wearing their hair in braids.  When plaintiff pointed them out to defendant
4  Allbee, defendant replied that it was easier for white guys with long hair to keep their hair
5  braided while "blacks just want their nappy heads looking cool.  You all are nothing but gang
6  banging crackheads anyway.  You don't need no braids."  Defendant Powell added, "We know
7  what we're doing, it's you brothers that we have all the problems out of all the time."
8       Defendants contend that plaintiff testified at his deposition that defendants were
9  not motivated by racial discrimination when they cut off his braids.  Defendants state that
10 plaintiff testified that defendants cut his hair because he was not from Sacramento and because
11 he had a prior disagreement with defendant Allbee.  In support of these claims, defendants cite
12 pages 32, 47-48, 73-74 of plaintiff's deposition transcript.
13      Plaintiff testified that while his hair was being cut, defendants commented that he
14 was not from Sacramento but that "it was more racial stuff than anything."  Philson Decl., filed
15 December 17, Exhibit B, p. 32: 11-18.  Plaintiff later testified that while other African American
16 men were permitted to wear their hair in braids, he was singled out because defendant Allbee did
17 not like him.  Id., p. 47: 14-25.  When asked if this was the only reason, plaintiff answered that
18 there were other reasons.  Id., p. 48: 6-10.  He also testified that he was singled out because he
19 was documented on jail records as a Crip.  Id., p. 74.
20      Plaintiff is not required to prove that defendants' conduct rested solely on racially
21 discriminatory purposes.  Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429
22 U.S. 252, 264, 97 S. Ct. 555, 563 (1977).  Plaintiff must demonstrate that racial discrimination
23 was a motivating factor.  Id.
24      According to plaintiff's evidence, defendants made racial comments while they
25 cut off his braids and later suggested that only African American inmates would not be permitted
26 to wear braids.  Plaintiff also claims that he saw white inmates with braids.  Although plaintiff

also claims that he saw African American inmates wearing braids, the court finds that he has presented sufficient evidence to suggest that defendants were motivated in part by racial discrimination. Accordingly, the court finds that taken in the light most favorable to plaintiff, defendants racially discriminated against plaintiff when they cut off his braids.[2]

"The next question [of the qualified immunity analysis] is whether the constitutional right that would be violated was clearly established. That is a 'two-part inquiry: (1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official have believed his conduct was lawful?'" Id., quoting Jeffers v. Gomez, 267 F.3d 895 910 (9th Cir. 2001). "However, '[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Id., quoting Saucier, 533 U.S. at 202.

At the time of the incident the law was clearly established that racial discrimination against prisoners was unconstitutional. Defendants argue that a reasonable officer would have believed his conduct lawful in that situation because plaintiff refused to comply with the jail policy by removing his braids and because pruno had been found in his cell. While plaintiff was not in compliance with the no-braid policy, plaintiff claims that defendants permitted white inmates to wear braids and made comments suggesting that the no-braid policy was enforced against African American inmates only. Under these circumstances, the court finds that no reasonable officer would believe that cutting off plaintiff's braids was lawful. Accordingly, the court cannot find that defendants are entitled to qualified immunity as to plaintiff's racial discrimination claim.

\\\\\

---

[2] The parties dispute whether plaintiff refused defendants' orders to remove his braids. Whether plaintiff refused defendants' orders to remove his braids is not strongly probative of whether defendants were motivated by racial discrimination when they enforced the no braid policy against plaintiff.

B. Monell

Defendants argue that defendant Sacramento County is entitled to summary judgment insofar as plaintiff states a Monell claim against this defendant.

A municipality may be sued under 42 U.S.C. § 1983 if an action pursuant to official municipal policy of some nature caused a constitutional tort. Monell v. Department of Social Services, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036 (1978). A local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights. Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).

Plaintiff's Monell claim against defendant Sacramento County is based on a policy of inaction, i.e. permitting employees to enforce the no-braid policy in a racially discriminatory manner. The policy of inaction must be more than mere negligence. Daniels v. Williams, 474 U.S. 327, 333-336, 106 S. Ct. 662, 666-669 (1986). It must be a conscious or deliberate choice among various alternatives. Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001).

In the instant case, plaintiff has not demonstrated that defendant Sacramento County had a policy of permitting employees to enforce the no braids policy in a racially discriminatory manner. There is no evidence that defendant made a "conscious choice" to permit this alleged racial discrimination. Accordingly, the court recommends that defendant Sacramento County be granted summary judgment.

C. Remaining Claims

In the amended complaint, plaintiff alleges that his injuries resulted from the failure of defendant Blanas to properly train the other defendants. Amended Complaint, p. 9, ¶ 29. Plaintiff also argues that defendants violated various state laws and used excessive force in violation of the Eighth (Fourteenth) Amendment. Graham v. Connor, 490 U.S. 386, 395, n. 10, 109 S. Ct. 1865 (1989) (The Due Process clause protects pretrial detainees from the use of

\\\\\

excessive force that amounts to punishment). Defendants have not moved for summary judgment as to these claims.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' December 17, 2004, summary judgment motion be granted as to plaintiff's claims against defendant Sacramento County and as to plaintiff's claims for violation of the Thirteenth Amendment as to all defendants; defendants' summary judgment motion be denied in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 4/25/05

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
bell2335.sj